# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 16-CR-01099-WQH |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| COURTLAND M. GETTEL, | |
| Defendant. | |

HAYES, Judge:

The matters before the Court are the third party petitions asserting an interest in forfeited property. (ECF Nos. 22, 24, 25, 26, 28, 29, and 30-1).

## I. Background Facts

On May 19, 2016, Defendant Courtland Gettel was charged by Information (ECF No. 1) with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and criminal forfeiture. *Id.* at 1. Defendant entered into a Plea Agreement and signed Factual Basis Addendum to the Plea Agreement (ECF Nos. 10, 11). Defendant pled guilty to the Information and agreed to admit conduct outlined in the Factual Basis Addendum in exchange for the agreement of the Government to not bring any further charges that arise out of the facts within the Factual Basis Addendum. *Id.*

In August 2013, and continuing through January 2015, within the Southern District of California, the Defendant committed wire fraud conspiracy, in violation of Title 18 United States Code § 1349. (ECF No. 11 at 2). Defendant was the operator and majority shareholder of Conix, Inc. ("Conix"). (ECF No. 11 at 1). Conix bought

single-family homes from banks or distressed homeowners, and re-sold the homes for a profit. Conix acquired luxury properties in La Jolla and Del Mar, California. The luxury properties were used as collateral to obtain loans in order to purchase the properties for greater than the worth of the properties. *Id.* Defendant misrepresented the worth of the properties, concealed the true purchase prices, falsified the properties' intended uses, and made other material misrepresentations to the lenders. *Id.*

Defendant negotiated with "new lenders to obtain millions of dollars in additional loans secured by the properties, concealing from the new lenders that the properties were encumbered with high-priority claims." *Id.* at 3. Defendant and his conspirators forged signatures and documents, like "Deeds of Full Release." *Id.* The proceeds of the offense were approximately $33,600,000 (U.S. Dollars). *Id.* at 4.

As part of the Defendant's Plea Agreement and Forfeiture Addendum, Defendant agreed to a monetary judgment of $33,600,000 to be entered against him. (*See* ECF No. 10 and 12).

On June 7, 2016, this Court accepted the Defendant's guilty plea. (ECF No. 15).

On June 21, 2016, the Government, Defendant, and Katheryn Nighswander filed a joint stipulation and agreement regarding the sale of properties 750-760 Country Club Lane, Coronado, California (ECF No. 16). Nighswander is the Defendant's ex-wife. The parties agreed that proceeds of the Defendant's offense were used to purchase the two adjacent properties. *Id.* at 1. Because the properties were currently in escrow from an "arms-length" sale, divesting both Defendant and Nighswander from any further interest in the properties, the proceeds of the sale were to be placed into an account controlled by the United States Marshall Service, Southern District of California. *Id.* at 2. The net proceeds constitute the funds subject to forfeiture.

On June 24, 2016, this Court issued an Order for Criminal Forfeiture in the amount of $33,600,000. (ECF No. 18).

Pursuant to Title 21 United States Code § 853(n)(1), the Government published notice online and "notices of forfeiture were sent to potential third parties as the United

States became aware of their possible interest in the proceeds of the sale." (ECF No. 40 at 8). From August 2016 through October 2016, eight third parties petitioned the Court to assert an interest over the forfeited properties.

On August 23, 2016, Francis John Ragen III ("Ragen") filed a third party petition, on behalf of himself and Ragen Family Trust, to assert an interest in the forfeited property. (ECF No. 22). Petitioners are victims of Defendant's fraud scheme. (ECF No. 40 at 9). Defendant defaulted on a $3,000,000 loan to Ragen. None of Ragen's losses are directly traceable to the proceeds subject to forfeiture. *Id.* On August 24, 2016, 750-760 CCL, LLC/HGG Trust jointly filed a third party petition to assert an interest in the forfeited property. (ECF No. 23). Both entities are operated by the Defendant's ex-wife, Nighswander. Both entities were in possession of the adjacent home and vacant lot which were sold, giving rise to the $853,361 in net proceeds. (ECF No. 23 at 4). 750-760 CCL, LLC/HGG Trust's petition admitted that fraudulently-obtained proceeds from Partner's Capital loan were used to purchase the adjacent home and vacant lot. *Id.* at 4. Petitioners subsequently withdrew this Petition. (ECF No.117).

On August 25, 2016, First American Title Insurance Company ("First American") filed a third party petition to assert an interest in the proceeds subject to forfeiture. (ECF No. 24). First American was the title insurance carrier for Anchor Loans, Inc. ("Anchor Loans."). *Id.* at 1. Anchor Loans made a $4,625,000 loan to the Defendant for property located in La Jolla. *Id.* As Anchor Loan's title insurance carrier, First American is a victim of Defendant's fraud scheme. (ECF No. 40 at 9). None of First American's losses are directly traceable to the proceeds subject to forfeiture. *Id.*

On August 30, 2016, Christiana Trust filed a third party petition to assert an interest in the forfeited property. (ECF No. 25). Defendant had pledged a pool of assets in order to obtain loans from Christiana Trust – through JP Morgan. (ECF No. 11 at 8-9). The pool of assets included two of the properties located in Calle Del Oro

and La Jolla used in the fraud scheme. *Id.* Christiana Trust is a victim of Defendant's fraud scheme. None of the losses are directly traceable to the proceeds subject to forfeiture. (*See* ECF No. 119, 125, and 127).

On September 21, 2016, Javlin One, LLC ("Javlin") filed a third party petition to assert an interest in the forfeited property. (ECF No. 26). Javlin made three loans to Defendant for three different properties. (ECF No. 11 at 5-12). Two properties were located in La Jolla and the other was located in Del Mar. *Id.* Javlin is a victim of the of Defendant's fraud scheme. None of Javlin's losses are directly traceable to the proceeds subject to forfeiture. (ECF No. 40 at 12).

On September 28, 2016, Keystone National Group ("Keystone") filed a third party petition to assert an interest in the forfeited property. (ECF No. 28). Keystone issued two loans to Defendant, in the amounts of $4,050,000 and $238,950 secured by the property at 750 and 760 Country Club Lane. (ECF No. 28 at 1). Keystone's losses are directly traceable to the forfeited funds, but Keystone released the 750 and 760 Country Club Lane property as collateral, and allowed 750-760 CCL, LLC to refinance. *Id.* In exchange for releasing the lots as collateral, Keystone was repaid – $65,679.72 still outstanding in the form of a promissory note – and was given a LLC membership pledge agreement. *Id.* Keystone is a victim of Defendant's fraud scheme and a general creditor. Keystone's losses are not directly traceable to the forfeited property. (ECF No. 40 at 11).

On September 30, 2016, Stewart Title Guaranty Company ("Stewart Title") filed a third party petition to assert an interest in the forfeited property. (ECF No. 29). Stewart Title was the title insurance carrier for Partner's Capital; CPIF California, LLC ("CPIF"); and LJ 6309, LLC ("LJ"). (ECF No. 29 at 2). Each of the insured lenders loaned Defendant money for different properties and were victims of Defendant's fraud scheme. *Id.* Only Partner's Capital's loan was directly traceable to the proceeds subject to forfeiture. *Id.* at 5. Stewart Title paid Partner's Capital for the defrauded funds. *Id.* Stewart Title is a victim of Defendant's fraud scheme and Stewart Title's

losses are directly traceable to the proceeds subject to forfeiture. (ECF No. 40 at 12 and ECF No. 119).

On October 13, 2016, R2R Capital-Del Mar Lender, LCC ("R2R") filed a third party petition (ECF No. 30-1) to assert an interest in the forfeited property. R2R loaned Defendant $3,000,000 using a property used in Defendant's fraud scheme, located in Del Mar, as collateral. *Id.* at 2. R2R is a victim of Defendant's fraud scheme, but the losses are not directly traceable to the proceeds subject to forfeiture. (ECF No. 40 at 11).

### B. The Proceeds Subject To Forfeiture

In September 2014, Defendant and co-conspirators began negotiations with Partner's Capital 101, LLC ("Partner's Capital") to acquire a $2,464,000 loan using a property, located at 13594 Mar Scenic Drive, Del Mar, California, as collateral. (ECF No. 11 at 7). During the negotiation and loan execution, Defendant fraudulently concealed two prior active encumbrances upon the property from Partner's Capital. *Id.*

On October 14, 2014, $2,340,000 of Partner's Capital's loan was moved into an account controlled by J.G., a co-conspirator and Defendant's attorney. Later that day, Defendant used $1,811,444.17 of Partner Capital money in J.G.'s account to purchase the vacant lot at 750 Country Club Lane, Coronado, California. (ECF No. 40-3 and 40-11 at 2).

Defendant began purchasing the lot through an LLC called AIM West, LLC ("AIM West"). (ECF No. 40-11 at 2). AIM West was owned by two other LLCs, which were in turn owned by a fourth LLC controlled by Defendant and a co-conspirator. *Id.* In total, the vacant lot was purchased for $2,813,907.27. *Id.* To purchase the property, the remaining funds were contributed from the various LLCs in the chain controlling AIM West. *Id.* Before the sale closed, Defendant had AIM West replaced with HGG Trust as the purchaser of the lot. (ECF No. 40-5 at 1). AIM West also released its deposit to HGG Trust as well. *Id.* HGG Trust is "operated by Nighswander, the Grantor; Diane Will (Nighswander's mother), the Trustee with

Defendant and Nighswander's minor son as the beneficiary." ( ECF No. 40-11 at 2). On October 15, 2014, HGG Trust became the official buyer of the vacant lot, when "Nighswander signed documents to complete the purchase." *Id.*

During December 2014, Defendant through AIM West secured two short term loans ($4,050,000 and $238,950) from Keystone National Group ("Keystone") to purchase the adjacent home, located at 760 Country Club Lane. (ECF No. 40-6). The loan was secured by both the home and vacant lot. *Id.* Like the vacant lot, possession of the home was to be transferred. On December 11, 2014, Nighswander and her mother through HGG Trust formed 750-760 Country Club Lane, LLC ("750-760 CCL, LLC") for the sole purpose of possessing and maintaining the properties. *Id.*

On or around December 18, 2014, prior to the closing of the sale of the home on 760 Country Club Lane, AIM West was again replaced as the purchaser. (ECF No. 40-8). 750-760 CCL, LLC was substituted as the purchaser and AIM West's deposit was released to the transferee. *Id.* The vacant lot held by HGG Trust was also transferred to 750-760 CCL, LLC. (ECF No. 40-7).

According to Special Agent John Robert's declaration, on March 6, 2015, "Keystone recorded a Notice of Default." (ECF No. 40-11 at 3). In both May and June of 2015, Keystone requested a payoff of approximately $4,300,000. *Id.* On or around June 3, 2015, Nighswander attained a new loan of $4,000,000 from Bank of Internet ("BofI"), and a subordinate loan from Empac Financial LP ("Empac"). *Id.* After the new loans were secured, Keystone allowed the 750-760 CCL, LLC to refinance its overdue loans. (*See* ECF No. 28).

During August, 2015, Keystone and Nighswander worked together to create an acceptable refinancing for both parties. *Id.* As part of the agreement, Keystone accepted the money it was owed, with an outstanding balance of $65,679.72. *Id.* Keystone agreed to release the properties as collateral, and received a promissory note and a LLC membership pledge. *Id.*

On July 8, 2016, 750-760 CCL, LLC sold both properties to "an arms-length

purchaser" for approximately $6,150,000. (ECF No. 40-11 at 4). The net proceeds from the sale were subject to a "deduction of closing and escrow costs, repayment of third party loans on the property, and related fees, costs and expenses to the United States Marshal Service, Southern District of California" and deposited into the seized asset account pending further order of the Court. (ECF No. 16 at 3). The amount of money deposited into the account subject to criminal forfeiture was $853,361. (ECF No. 40-11 at 4).

## II. Applicable Law

Property subject to criminal forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture ... Any property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter ordered forfeited to the United States, unless the transferee establishes in a hearing . . . that he is a bona fide purchaser for value. . . ." 21 U.S.C. § 853(c); *see United States v. Parcel of Land, Bldgs, Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.*, 507 U.S. 111, 137 (1993) (Scalia, J., concurring) (explaining the codification of the relation-back doctrine under 21 U.S.C. § 853(c): "[A]t the time the third-party interests are being adjudicated, the relation-back doctrine has already operated to carry back the title of the United States to the time of the act giving rise to the forfeiture, and the third parties have been divested of their property interests . . . Indeed, if the court finds that the transferee has a valid claim under the statute, it must amend the order of forfeiture." (internal citations and quotations omitted)).

Under Title 21, United States Code §853(n), third party petitioners may establish a right to the property subject to forfeiture. Title 21, United States Code § 853(n)(6) provides:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture

> invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the Court shall amend the order of forfeiture in accordance with its determination.

28 U.S.C. § 853(n)(6)(2009).

The disposition of the property is governed by federal forfeiture statutes, but "state law determines what rights, title or interests the various claimants possess in" forfeited property. *United States v. Nava*, 404 F.3d 1119, 1128-1129 (9th Cir. 2005).

Under California law, a constructive trust arises by operation of law as soon as "a fraudster acquires property from a victim by fraud." *United States v. $4,224,958.57* ("*Boylan*"), 392 F.3d 1002, 1004 (9th Cir. 2004); *citing* Cal. Civ. Code §§ 2223 and 2224; *quoting United States v. Pegg*, 782 F.2d 1498, 1500 (9th Cir. 1986) ("One who gains a thing by fraud . . . is . . . an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."). "The obligation on the fraudster is imposed by law and arises immediately with his acquisition of the proceeds of the fraud." *Boylan*, 392 F.3d at 1004.

California Civil Codes § 2223 states: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2223 (1987). Section 2224 states:

> One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

Cal. Civ. Code § 2224 (1987).

In *United States v. Wilson*, 659 F.3d 947, 953 (9th Cir. 2011), the Court concluded that petitioner's constructive trust and the Government interest in the

fraudulently attained property vests simultaneously. In *Wilson*, the Court explained that "the Government is merely standing in Wilson's shoes, and that the Government's interest cannot exceed" the Defendant's interest. *Id.* at 954. Upon a petitioner, "original owner," meeting the burden of proof outlined in § 853(n), the "Government's interest is eliminated." *Id.* at 953.[1]

To prevail using a constructive trust theory, a petitioner typically must show that the forfeited property is directly traceable to the fraud. *See United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985) ("It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer."). Equity can take the place of tracing rules where defrauded parties cannot trace funds from their constructive trust to the property subject to forfeiture. *See Cunningham v. Brown*, 265 U.S. 1, 13 (1924) (equity applied where parties were unable to directly trace co-mingled funds subject to bankruptcy priority rules).

Unsecured general creditors lack "a 'legal right, title, or interest' in the debtors specific assets, as required under § 853(n)(6)(A)." *United States v. $20,193.39,* 16 F.3d 344, 347 (9th Cir. 1994) (*citing* 21 U.S.C. § 853 (2009)).

### III. Ruling of the Court

The record in this case shows that Stewart Title was the title insurance carrier for three victims of the Defendant's wire fraud scheme and that "that the net proceeds of the sale of the Country Club Lane Property are traceable to" the victims insured by Stewart Title. (ECF No. 29 at 1). Stewart Title asserts and the Government agrees that Stewart Title is the only victim with losses directly traceable to forfeited funds. (ECF No. 40 at 11). The Government asserts that "on equitable grounds" all of the victims of the Defendant's fraud scheme should be included in an order to distribute the funds

---

[1] The only alternative manner for a petitioner to succeed in an ancillary proceeding is for the petitioner to show that the petitioner was a bona fide purchaser in accordance with § 853(n)(6)(B). With the withdrawal of the Petition by 750-760 CCL, LLC/ HGG, this provision plays no role in this resolution.

"pro rata." *Id.* at 13. In the alternative, the Government submits that the money should be given to the only directly traceable victim, Stewart Title. *Id.* at 18. On August 7, 2017, the Government submitted additional information asserting that "Stewart Title can trace a total of $2,094,917 in fraudulently-obtained funds directly to the forfeited funds, and remains the sole known petitioner with directly traceable loses." (ECF No. 119 at 8). Other third party petitioners contend that "the Court should not apply the normal 'tracing rules' for claimants regarding funds held in constructive trust." (ECF No. 67 at 4). Based on equitable grounds, other third party petitioners assert that "victims of a fraud scheme occupy the same legal position whether their proceeds can be directly traced or not." (ECF No. 76 at 6).

The record establishes that Stewart Title was the title insurance carrier for Partners Capital and that Partners Capital loaned Defendant $2,464,000. The record establishes that a constructive trust was formed around the Partner Capital's $2,464,000 loan pursuant to California Civil Code sections 2223 and 2224 at the moment the money was fraudulently taken by Defendant. Upon Stewart Title's satisfying its obligations to Partners Capital's title insurance carrier, Stewart Title became the beneficiary of the same constructive trust. The evidence in the record establishes that Defendant used $1,811,444.17 of the funds held in constructive trust for Stewart Title to purchase the properties in Coronado. The properties were subsequently sold and the net proceeds are directly traceable to losses suffered by Stewart Title. Pursuant to 28 U.S.C. § 853(n), the Court concludes that Stewart Title is entitled to the forfeited funds.

The remaining third party petitioners are victims of Defendant's fraud scheme without losses directly traceable to the forfeited funds. These petitioners do not possess an interest in the forfeited property pursuant to California Civil Code sections 2223 and 2224 superior or equal to the interest of Stewart Title. Under the facts of this case, the Court concludes that the normal tracing rules apply.

**IV. Conclusion**

IT IS HEREBY ORDERED the third party petition of Stewart Title Guaranty Company (ECF Nos. 29 and 63) are granted. Stewart Title is entitled to the proceeds from the sale of the Country Club Lane property deposited with the Court. The Government shall prepare the appropriate order.

IT IS HEREBY ORDERED the third party petition of Keystone National Group, LLC (ECF No. 28) is denied.

IT IS HEREBY ORDERED the third party petition of Francis John Regan III (ECF No. 22) is denied.

IT IS HEREBY ORDERED the third party petition of R2R (ECF No. 30-1) is denied.

IT IS HEREBY ORDERED the third party petition of First American Title Insurance Company (ECF No. 24) is denied.

IT IS HEREBY ORDERED the third party petition of Christiana Trust (ECF No. 25) is denied.

IT IS HEREBY ORDERED the third party petition of Javlin One LLC (ECF No. 26) is denied.

DATED: September 7, 2017

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge