ROBERT S. BREWER, JR.
United States Attorney
EMILY W. ALLEN (Cal. Bar No. 234961)
Assistant U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Tel:   (619) 546-9738
Email: emily.allen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 16CR1099-WQH |
|---|---|
| v. | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED REQUEST ON REMAND FOR ORDER REDUCING OR MODIFYING JUDGMENT UNDER 18 U.S.C. § 3582(c)(1)(A)(i) |
| COURTLAND GETTEL, | |
| Defendant. | |

With his Motion to the Ninth Circuit for a limited remand, defendant Courtland Gettel asks this Court to revisit its August 6, 2020 Order ("Order") (Doc. 198) denying his request for early release.  He asserts: (1) new information about his medical condition supports his release; (2) updated information about the extent of COVID-19 infections at his facility should change the Court's analysis; and (3) that a revised Order is needed to address his earlier argument that family circumstances justify his early release.  *See* Defendant's Motion for Limited Remand, 9th Cir. Case No. 20-50220, Doc. 9 ("Mot. for Remand").  Gettel's claims, both alone and in combination, are insufficient to support his early release.  The United States respectfully requests that this Court deny Gettel's updated request for an order reducing his sentence.

### A.  Defendant Has Raised No New Facts or Arguments Warranting Relief

First, Gettel's request for remand focuses primarily on his completely unsubstantiated claim that he "has apparently, again, been diagnosed with cancer." Mot. for Remand at 3. In fact, Gettel's BOP medical records show the opposite; as of October 26, 2020, when Gettel was seen at BOP's Health Services, the provider noted that his "recent biopsy shows dermatofibroma." *See* Exh. 5[1] (BOP Health Services Clinical Encounter record, Oct. 26, 2020), at 3. According to Harvard Health Publishing, "[d]ermato-fibromas are small, noncancerous (benign) skin growths" that "rarely require treatment." *See* https://www.health.harvard.edu/a_to_z/dermatofibroma-a-to-z.[2] BOP records show that Gettel has a "routine" follow-up radiology appointment scheduled for December 18, 2020. Exh. 5 at 2. In short, other than Gettel's own assertion (expressed through counsel), there is no evidence that Gettel has been "unequivocally diagnosed with melanoma by the BOP[.]" Mot. for Remand, Exh. 6, at ¶7.[3] BOP records show that Gettel receives regular if not frequent medical attention to address each of his stated concerns. Nothing should alter this Court's finding that "Defendant's medical conditions have been addressed by the Bureau of Prisons and do not demonstrate 'extraordinary and compelling reasons' for his release." Order at 5.

Second, Gettel argues that the rise in COVID-19 infections at his BOP facility, FCI La Tuna, warrants reconsideration. Mot. for Remand at 4. He notes that, since the

---

[1] Exhibits 1 through 4 were submitted along with the United States' opposition to Gettel's first motion for early release. *See* Government's Response in Opposition to Defendant's Emergency Motion ("USA Response") (Doc. 196). The entire USA Response, including the exhibits, statement of facts, and argument, are incorporated here as part of the United States' renewed opposition following Gettel's remand request.

[2] The Harvard Medical School publication continues, "[s]ome people may prefer to have their dermatofibromas removed if the growth is unsightly, is in an inconvenient location (such as in a place that repeatedly becomes nicked while shaving or is irritated by clothing), or is painful or itchy." *Id.*

[3] BOP's records show that Gettel has a past history of melanoma, but it is unclear when or by whom that diagnosis was made, and whether Gettel self-reported this information to Health Services or if it was independently verified.

Court's August 6 Order (which found that "there are currently no reports of COVID-19 cases at the facility in which Defendant is currently housed[,]" Order at 5), the circumstances at FCI La Tuna have changed. But this foreseeable development should not have any material impact on the Court's decision to deny Gettel's early release. It remains true that BOP has carefully modified its operation plans to address the risk of COVID-19 transmission at its facilities. *See id.* As recently as November 25, 2020, the BOP has updated its Modified Operations plan to address the continually-evolving situation in its facilities. *See* https://www.bop.gov/coronavirus/covid19_status.jsp. And as set forth in the USA Response, the BOP has exercised significantly increased authority to designate inmates for home confinement; between March 26 and November 30, 2020, the BOP has placed a total of 18,027 inmates in home confinement in response to the pandemic. *See* https://www. bop.gov/coronavirus/index.jsp. This is an enormous increase since the United States filed its initial response in opposition, in July 2020, when 4,552 inmates had been transferred to home confinement. USA Response at 7. Although there are now reports of COVID-19 cases at FCI La Tuna, the Court's ruling remains sound.

  Finally, Gettel suggests that the Court did not properly evaluate his request for release based on his family circumstances. Mot. for Remand at 5. But as the Order makes clear, the Court did evaluate, and reject, Gettel's assertion "that his family circumstances constitute compelling and extraordinary reasons for his immediate release to assist in the care of his son during the child's mother's working hours." Order at 2. Gettel has raised no new facts or arguments to support reconsideration of the Court's determination that, taken as a whole, Gettel's circumstances did not warrant early release. To the extent any clarification is needed to assist the Court of Appeals, the Court should find that Gettel's family circumstances do not present "extraordinary and compelling reasons" warranting a reduction in his sentence. Gettel's son has an able caretaker with family support, and he presents no new circumstances or facts to suggest otherwise. *See* USA Response at 9-10, 18.

**B.   Defendant Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction**

For largely the same reasons Gettel's initial motion failed, he has not and cannot now establish the "extraordinary and compelling reasons" the law requires to reduce his 135-month sentence.  *See* 18 U.S.C. § 3582(c)(1)(A) (noting that the decision to grant early release must be consistent with the U.S. Sentencing Commission's policy statements, found at USSG §1B1.13, cmt. n.1).   Gettel's health status remains essentially unchanged; as before, he is in Care Level 1 and receives all necessary medical treatment to manage his health.  *See* Gettel's Inmate Profile (Exh. 3); BOP Care Level Classification Guide (Exh. 4).

Moreover, the newly-reported cases of COVID-19 at FCI La Tuna, where Gettel is housed, do not change this analysis.  The COVID-19 pandemic poses a general threat to every non-immune person in the country, and does not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. *See United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)"). To classify COVID-19 as an extraordinary and compelling reason for release would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

Gettel has also not identified any change in his family circumstances that could qualify him for relief.  In support of his request for remand, Gettel has presented no new

facts or evidence to indicate that his children's mother has been unable to care for their sons since May 2020 when she submitted her declaration. To qualify as "extraordinary and compelling"—a high bar, to be sure—the Guidelines require that the caregiver has either died or been incapacitated. While Ms. Nighswander's work as a nurse presented additional challenges to providing child care, she was not "incapacitated," and Gettel asserted only that without the extended assistance of her parents, she "will be effectively without safe child care options." He did not describe any effort taken to obtain other child care arrangements, either paid or through family or community support, nor did he claim to be the only available caregiver.

It is Gettel's burden to establish the "incapacitation of the caregiver of the defendant's…minor children" and that he is the only available caregiver as a result. USSG §1B1.13, cmt. n.1(C). He has not met this burden. Gettel's qualified statement about limited child care options does not allege that Gettel is the only available caregiver. Because it is easy to simply allege the absence of other potential caregivers, "a robust evidentiary showing that defendant is the only available caregiver" is required. *United States v. Richardson*, No. 18CR507, 2020 WL 2200853 at *2 (E.D.N.C. May 6, 2020) ("Although defendant alleges his mother can no longer care for his daughter due to her medical issues, there is no evidence submitted directly from defendant's mother or other records supporting these assertions. Defendant also fails to explain why he is the only available caregiver for his child in these circumstances"). Accordingly, "[d]istrict courts routinely deny motions for compassionate release when inmates cannot show that they would be the only available caregiver, even if their incarceration imposes substantial burdens on their spouse or co-parent to a minor child." *United States v. Cruz-Rivera*, No. 11-43, 2020 WL 5993352 at *5 (E.D.P.A. October 9, 2020) (collecting cases).

Caring for family members, especially small children, "in the midst of a public health crisis, is increasing challenging. But it is neither unusual nor insurmountable." *United States v. Dogan,* No. 16CR198, 2020 WL 4208532 at *3 (E.D. Cal. July 22,

5

2020). And just as in *United States v. Crandle,* No. 10-35, 2020 WL 2188865 at *4 (M.D. La. May 6, 2020), here "the Court has before it no information as to why other relatives cannot" provide the necessary care. *See United States v. Goldberg,* No. 12-180, 2020 WL 1853298 at *4 (D.D.C. April 13, 2020) (denying relief where "the record indicates that other family members . . . are available" to provide care); *Cruz-Rivera,* 2020 WL 5993352 at *7 (even assuming caretaker was incapacitated, defendant "makes no mention of his family members or others that could potentially care for his child"). Indeed, as just one example, Gettel's children might rely on his own mother, the children's grandmother, who has reported to this Court that she has a 3,500 square foot home, near Tucson (where the boys' mother lives), with 4 bedrooms and 3 bathrooms. *See* Letter from Mary Charters, Motion for Release (Doc. 193), Exh. 3, p.12. She has the means and ability to provide Gettel "transportation, health insurance, financial assistance, and anything else he may need to succeed and thrive." *Id.* Gettel has not explained why Ms. Charter is not equally able to provide for her grandchildren's care and offer a safe environment while their mother works.

In short, Gettel's claim that his family circumstances are "extraordinary and compelling" remains insufficient.

    **C.**    **The § 3553(A) Factors Continue to Weigh Against Defendant's Release**

In any case, Gettel's request for a sentence reduction should be denied because—as this Court recently found—he "has failed to demonstrate factors set forth in 18 U.S.C. § 3553(a) that would support a reduction in the sentence imposed taking into account the seriousness of his offenses and the leadership role of the Defendant in a long term scheme to defraud others of tens of millions of dollars." Order at 5.

Gettel was convicted of two entirely separate multi-million dollar fraud schemes in two different districts. He continued his schemes and lies even while on pre-trial release, when he orchestrated yet a third complex, multi-million dollar real estate fraud. This Court's decision to impose a 135-month sentence accounted not only for his history and characteristics, but the nature and circumstances of his serious, damaging, and far-

reaching criminal activity, which resulted in tens of millions of dollars lost by a host of victims over the course of years—a scheme that Gettel orchestrated and uniquely profited from. It also accounted for the need to promote respect for the law, and to provide adequate deterrence to Gettel and to others who might contemplate similar schemes. Indeed, Gettel's sentence included an enhancement for obstruction of justice, for the very reason that his "respect for the law" was clearly lacking in his period of pre-trial release. Even in light of the COVID-19 pandemic, Gettel remains a danger to the community and the 3553(a) factors strongly counsel against a reduction in Gettel's term of imprisonment.

### D. Defendant Has Not Exhausted Administrative Remedies

Gettel's claims on remand do not in fact raise any "new" evidence or factors, so this Court can easily determine that his release remains unwarranted. But if Gettel *were* correct that there is "new" evidence to consider—his claimed (though unsupported) recent diagnosis of cancer and the number of COVID-19 diagnoses at FCI La Tuna—then he would first be required to submit his renewed request to the warden and satisfy the exhaustion requirements to allow this Court's review.

A court may grant a defendant's motion for a reduction in sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requires the defendant to "present the same factual basis for the compassionate-release request to the warden." *United States v. Mogavero*, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (finding defendant who sought release "based on cancer plus COVID-19 exposure risks" was required to present *both* facts to the warden in order to properly exhaust the administrative process).

This requirement has important underpinnings: BOP conducts an extensive assessment for compassionate release requests and conducts a thorough review of the

inmate's specific needs and the conditions of confinement. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This assessment is particularly important during the current pandemic, which affects all inmates in every BOP facility throughout the country and therefore heightens the need for a uniform and consistent response. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."). BOP must balance a host of considerations in deciding whether to recommend a sentence reduction or grant home confinement—not only the health of the inmate and BOP staff, but also the safety of the public. BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations in light of on an inmate's background and medical history and more general considerations regarding the conditions and needs at particular facilities. If Gettel did have new evidence to consider (which he does not), the BOP should consider it first before this Court.

### E.     Conclusion

Gettel's motion should again be denied. On limited remand, he has not established that he is entitled to a reduction in his sentence. To the extent clarification is helpful to the Court of Appeals, the United States respectfully requests that this Court make a specific finding that Gettel has not met his burden of establishing that his family circumstances present "extraordinary and compelling reasons" for his early release.

DATED: November 30, 2020                    Respectfully Submitted,

ROBERT S. BREWER, JR.
United States Attorney

*/s/ Emily W. Allen*
EMILY W. ALLEN
Assistant U.S. Attorney

8